(97 App. Div. 191.)

CITY OF MT. VERNON v. KENLON et al.

(Supreme Court, Appellate Division, Second Department.   September 29, 1904.)

1. MUNICIPAL CORPORATIONS—OFFICERS' BOND—VALIDITY—STATUTES.

Notwithstanding the uncertainty as to the requirements of the charter of the city of Mount Vernon (Laws 1892, p. 355, c. 182), regarding the amount of bond required to be given by the city's receiver of taxes, and the time necessary for it to be given, as well as to whether the failure to give the required security within a certain time after election effects a vacancy in the office, the receiver's bond, which is by the charter declared a lien on the real estate of the receiver and his sureties until the bond is canceled and discharged, is, without regard to its validity, and the validity of the officers' acts, as measured by the charter, enforceable as a good statutory bond, under the Public Officers Law (Laws 1892, p. 1656, c. 681), expressly curing defective official bonds, and making the acts of de facto officers of the same validity as the acts of officers de jure.

2. SAME—CONSTITUTIONALITY OF LAW—ESTOPPEL TO QUESTION.

The constitutionality of a law requiring the bond of an officer to be a lien on the real estate of the officer and his sureties cannot be attacked by persons voluntarily executing such bond.

Appeal from Special Term, Westchester County.

Action by the city of Mount Vernon against Andrew M. Kenlon and others.   From an order and interlocutory judgment overruling demurrers to the complaint, defendants appeal.   Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Odell D. Tompkins, for appellants Andrew M. Kenlon et al.
Joseph S. Wood, for appellant Amanda Bussing.
Isaac N. Mills, for respondent.

HIRSCHBERG, P. J.   The plaintiff is a municipal corporation, chartered by chapter 182, p. 355, of the Laws of 1892.   The defendant John H. Brett was elected receiver of taxes and assessments, pursuant to the provisions of the charter, on May 16, 1898, for the term of two years, beginning June 15th following, on which day he entered upon the discharge of the duties of his office.   He took the prescribed oath of office on May 24th, and on the day when he entered upon the discharge of his duties executed his official bond in the penal sum of $25,000, which amount had been previously fixed by the common council, conditioned that he would faithfully account for and pay over all moneys received by him in his official capacity.   The bond was approved by the common council on July 19th, and filed with the city clerk on July 27th. The charter provides that the bond of the receiver of taxes and assessments shall be a lien upon his real estate and that of his sureties until canceled and discharged.   The complaint alleges a breach in the condition of the bond, in that the receiver failed to account for and pay over the moneys received by him, and prays for the foreclosure of the lien of the bond against him and the defendants, who are sureties thereon, and against other defendants who it is asserted have subsequent interests in or liens upon the real estate sought to be affected.

The demurrers, in so far as it is necessary .to consider them upon this appeal, assail the complaint as insufficient in the statement of a cause of action. The contention of the appellants is that it appears on the face of the complaint that the bond does not comply with the provisions of the charter, and therefore is invalid as to the lien, although good as a common-law obligation; and, further that the provision creating a lien is unconstitutional and void. They claim that the amount of the bond is in excess of that which is prescribed by the charter; that it was executed after the time designated by the charter for that purpose; that the lapse of time had rendered the receiver's office vacant; that he is accordingly to be regarded only as a de facto official; and that a bond executed in such circumstances can only be enforced, in accordance with its terms, freed from the lien, which can only exist upon strict compliance with the requirements of the enactment creating it.

The provisions of the charter material to the consideration of the questions presented are as follows:

Section 15 (Laws 1892, p. 359, c. 182) provides that:

"Every person elected or appointed to any office under this act, before entering upon the same, shall take the oath prescribed in article twelve of the Constitution of this state, and file the same with the city .clerk. * * * Every person so elected or appointed who neglects, for fifteen days after his election or appointment, to give the bond or security required by law, or by the common council under this act, or to take and file said oath of office, shall be deemed to have declined the office, and it shall be vacant."

It is further provided by section 30 (page 361) that:

"If any officer who shall be required by any of the provisions of this act, or by any ordinance of the common council to execute any bond before or after entering upon the duties of his office, shall fail to execute the same in the manner prescribed by this act, or by any such ordinance within ten days after he shall have been duly notified so to do, the common council may declare his office vacant, and proceed to cause the same to be filled in the manner provided in this act in cases of vacancies in offices."

Section 27 (page 360) provides as follows:

"The receiver of taxes and assessments shall hold office for two years. Before entering upon the duties of his office he shall enter into a bond to the city of Mount Vernon in such penal sum as shall be fixed by the common council, but which shall not be less than twenty thousand dollars, which bond must be approved by the common council and filed in the office of the city clerk."

By section 44 it is further provided that:

"The receiver of taxes and assessments within fifteen days after his election, shall make and execute as such a bond to the city of Mount Vernon, with sufficient sureties, who shall be freeholders within and residents of the city, in a penal sum of twenty thousand dollars, conditioned for the faithful dis-. charge of his duties, and that he will account for and pay over all moneys received by him as such receiver, which bond must be approved by the common council and filed with the city clerk before he enters upon the duties of his office. Such bond shall be a lien upon the real estate of the said receiver and his respective sureties, until canceled and discharged."

In the view which I take of the case, it is unnecessary to attempt to reconcile the apparently conflicting provisions of the

charter quoted. It may be assumed without, however, so deciding, that the penalty of the bond in question could only lawfully be fixed in the sum of $20,000; that the receiver of taxes and assessments is required to execute the bond within 15 days after his election, pursuant to section 44, p. 366, instead of having, as is claimed under section 27, the period preceding entry upon the duties of the office for that purpose; and that the vacancy in office, declared by section 15, becomes immediately effective upon failure to give the required security within the 15 days after election, without action upon the part of the common council, pursuant to the provisions of section 30. Nevertheless the bond when given must be regarded as a good and valid statutory bond, under the provisions contained in the Public Officers Law (chapter 681, p. 1656, Laws 1892), which seem to have been designed for the express purpose of accomplishing that result.

By section 15 of that act (Laws 1892, p. 359, c. 182), as amended, it is provided that, if a public officer shall enter on the performance of the duties of his office without taking the oath of office or filing the undertaking required by law, "his acts as such officer, so performed, shall be as valid and of as full force and effect as if such oath had been duly taken and filed, and as if such undertaking had been duly executed and filed, notwithstanding the provisions of any general or special law declaring any such office vacant."

By section 11 of the act it is provided that:

"The sum specified in an official undertaking shall be the sum for which such undertaking shall be required by or in pursuance of law to be given. If no sum, or a different sum from that required by or in pursuance of law, be specified in the undertaking, it shall be deemed to be an undertaking for the amount so required. If no sum be required by or in pursuance of law to be so specified, and a sum be specified in the undertaking, the sum so specified shall not limit the liability of the sureties therein. * * * The failure to execute an official undertaking in the form or by the number of sureties required by or in pursuance of law, or of a surety thereto to make an affidavit required by or in pursuance of law, or in the form so required, or the omission from such an undertaking of the approval required by or in pursuance of law, shall not affect the liability of the sureties therein."

And by section 12 of the act (Laws 1892, p. 1660, c. 681) it is further provided that:

"If a public officer required to give an official undertaking, enters upon the discharge of any of his official duties before giving such undertaking, the sureties upon his undertaking subsequently given for or during his official term shall be liable for all his acts and defaults done or suffered and for all moneys and property received during such term prior to the execution of such undertaking."

It seems clear to me that the design and effect of these provisions are to measure the liability of the sureties, not by the language of the obligation assumed by them, but by the requirements of the statutes under which the obligation may be required, and in conformity with which it purports to have been given; in other words, the obligation is to be regarded as that of the statute, and not of the common law. The acts of the de facto official are to be in all respects not only as valid, but of the same force and effect as those of an officer de jure, and the liability of the sureties upon

an official bond or undertaking required by law is not to be af-
fected in any degree by any failure, irregularity, or omission either
as to time, form, amount, execution, or approval. Assuming the
provision of the plaintiff's charter creating a lien upon the real
estate of the officer and of his bondsmen to be a valid one, the
subjection to such lien would seem to be a part of the liability in-
curred. It was said in Village of Olean v. King, 116 N. Y. 355, 362,
22 N. E. 559: "The sureties must be deemed to have executed the
bond with knowledge of, and to have contracted with reference
to, this provision of the charter." The subjection to such lien hav-
ing, therefore, been voluntarily assumed, the many cases cited by
the appellants have no application, wherein incumbrances upon
property were sought to be created by others without the consent
of the owners, and wherein, of course, it was held that the strictest
compliance with every statutory provision was an essential pre-
requisite.

It cannot be held upon this appeal, if at all, that the provision
of the charter creating a lien offended any constitutional right.
The doctrine of "due process of law" certainly cannot be invoked
on behalf of those who have voluntarily executed the bond, and the
subsequent incumbrancers may be bound in this instance by ac-
tual notice of the plaintiff's lien; assuming that constructive no-
tice by the filing in a public office of the document creating a lien,
which has long been a settled and approved practice, is to be
deemed insufficient. The date when the lien became effective, and
its amount and territorial scope and effect, are not now before
the court, although it is conceded by the respondent that the lien
cannot be lawfully extended so as to take effect beyond the city
limits. But whatever may be the ultimate decision upon the con-
stitutional question, it must be assumed that the claims of the
defendants, other than the principal and his sureties on the bond,
are subordinate to the lien of the plaintiff, as alleged in the com-
plaint, until the facts shall have been fully disclosed upon a trial.

The order and interlocutory judgment should be affirmed.

Interlocutory judgment affirmed, with costs. All concur.